IN THE COURT OF APPEALS OF TENNESSEE

AT KNOXVILLE

FILED

**January 29, 1999**

**Cecil Crowson, Jr.**
**Appellate Court**
**Clerk**

| | |
|---|---|
| OLYMPIA CHILD DEVELOPMENT CENTER, INC., DEBORA DUNN, Individually, MARY EVERHART, Individually, and LISA MURPHY, Individually, | ) C/A NO. 03A01-9804-CV-00136 <br> ) <br> ) <br> ) <br> ) <br> ) |
| Plaintiffs-Appellants, | ) |
| | ) APPEAL AS OF RIGHT FROM THE <br> ) BLOUNT COUNTY CIRCUIT COURT |
| v. | ) <br> ) <br> ) <br> ) <br> ) |
| CITY OF MARYVILLE, TENNESSEE, | ) |
| Defendant-Appellee. | ) HONORABLE W. DALE YOUNG, JUDGE |


For Appellants

KEVIN W. SHEPHERD
Maryville, Tennessee

For Appellee

ROBERT H. WATSON, JR.
NATHAN D. ROWELL
Watson, Hollow & Reeves, PLC
Knoxville, Tennessee



O P I N I O N


1

AFFIRMED IN PART
VACATED IN PART
REMANDED                                                Susano, J.

This action was brought against the City of Maryville ("the City") by plaintiffs Olympia Child Development Center, Inc. ("Olympia"), Deborah Dunn ("Dunn"), Mary Everhart ("Everhart"), and Lisa Murphy ("Murphy"), seeking damages arising out of an automobile accident. The collision occurred when a van owned by Olympia and driven by Murphy was struck by a vehicle driven by Rodney Parton, an off-duty Maryville police officer. The trial court granted summary judgment in favor of the City as to all claims, and the plaintiffs appealed, raising the following issue:

> Did the trial court err in granting summary judgment where disputed factual issues remain, and where the Defendant, who moved for summary judgment, failed to address all issues in its motion for summary judgment?

The City, meanwhile, formulates the issues as follows:

> 1. Did the trial court correctly grant summary judgment to the City since plaintiffs failed to present genuine issues of material fact to refute the evidence that Rodney Parton was not acting within the course and scope of his employment at the time of the accident?
>
> 2. Did the trial court correctly grant summary judgment to the City since the plaintiffs did not state a cause of action for negligence against James Carico that would impose liability on the City?
>
> 3. Did the trial court correctly grant summary judgment to the City since plaintiffs

Mary Everhart and Debora Dunn were not within the zone of danger, and suffered no property damage as a result of the accident?

4. Did the trial court correctly grant summary judgment to the City since plaintiffs failed to allege a due process violation, given that all federal claims against the City were voluntarily non-suited in federal court to allow the state claims to be returned to state court?

I.

On November 13, 1995, Murphy was driving a van owned by her employer, Olympia, a Maryville day-care facility. There were several children in the van. After stopping for a stop sign at an intersection and observing a brown car pass in front of her at a high rate of speed, Murphy proceeded into the intersection, at which time the van was struck by a vehicle driven by Rodney Parton, an off-duty Maryville police officer. Another off-duty officer, Tony Parton, was a passenger in Rodney Parton's car. At the time of the collision, Rodney Parton and Tony Parton were not in uniform and were traveling in the former's private vehicle; however, they were in pursuit of the brown car that had passed in front of Murphy immediately prior to the accident. Each testified in their respective depositions that they had observed the brown vehicle traveling on the wrong side of the road, and had followed it to obtain its license plate number. Rodney Parton acknowledged that he was traveling at a speed of at least 50 miles per hour while in pursuit of the other vehicle. He

testified that he had not activated the portable blue police light that was located under the seat of his car.

The accident resulted in injuries to Murphy and at least two of the children in the van, as well as damage to the van itself. Rodney Parton and Tony Parton were also injured. Another Maryville police officer, James Carico, prepared an accident report in which he stated that both Rodney Parton and Murphy had been at fault in the accident. In addition, Lt. Mike Johnston of the Maryville Police Department conducted an internal affairs investigation of the accident. In his report, Johnston estimated the speed of the Parton vehicle just prior to the collision at a minimum of 60 miles per hour, or double the posted speed limit.

The complaint, as subsequently amended, alleges that the City[1] is liable for various damages precipitated by the actions of its agent, Rodney Parton. It also alleges, among other things, that Murphy, Everhart and Dunn[2] suffered emotional and psychological harm as a result of the accident; that Murphy suffered physical injuries; that the City failed to follow its own policy which required that accidents of this nature be investigated by an outside law enforcement agency; that the City engaged in an attempt to conceal the wrongful conduct of its

---

[1]The plaintiffs also filed a separate action against Rodney Parton that is not part of this appeal.

[2]Dunn and Everhart are officers and shareholders of Olympia, whereas Murphy is an employee of the corporation.

4

officer; that Olympia suffered damage to its reputation and economic loss due to the City's failure to correct the police report assigning part of the fault for the accident to Murphy; and that the City was guilty of "negligent supervision and deliberate indifference" in the hiring, training and supervision of its officers.  The plaintiffs also asserted certain civil rights claims under 42 U.S.C. § 1983, which federal claims prompted the removal of this case to federal court; however, the plaintiffs subsequently took a voluntarily non-suit as to the federal claims, and the case was remanded to state court.

Following the resolution of pre-trial matters not relevant to this appeal, the City filed a motion for summary judgment.  The trial court held that the City was immune in all respects under the Governmental Tort Liability Act ("GTLA"), T.C.A. § 29-20-101, *et seq.*  The GTLA provides, in pertinent part, as follows:

29-20-201(a)

> Except as may be otherwise provided in this chapter, all governmental entities shall be immune from suit for any injury which may result from the activities of such governmental entities wherein such governmental entities are engaged in the exercise and discharge of any of their functions, governmental or proprietary.

29-20-202(a)

> Immunity from suit of all governmental entities is removed for injuries resulting from the negligent operation by any employee

5

> of a motor vehicle or other equipment while
> in the scope of his employment.

Presumably finding that Rodney Parton had not been acting within "the scope of his employment" at the time of the accident, the trial court granted the City's motion and dismissed the plaintiffs' case in its entirety.

## II.

We review the trial court's grant of summary judgment under the standard of Rule 56.04, Tenn.R.Civ.P., which provides that summary judgment is appropriate where

> the pleadings, depositions, answers to
> interrogatories, and admissions on file,
> together with the affidavits, if any, show
> that there is no genuine issue as to any
> material fact and that the moving party is
> entitled to a judgment as a matter of law.

When reviewing a grant of summary judgment, an appellate court must decide anew if judgment in summary fashion is appropriate. *Cowden v. Sovran Bank/Central South*, 816 S.W.2d 741, 744 (Tenn. 1991); *Gonzalez v. Alman Constr. Co.*, 857 S.W.2d 42, 44-45 (Tenn.App. 1993). Since this determination involves a question of law, there is no presumption of correctness as to the trial court's judgment. *Hembree v. State*, 925 S.W.2d 513, 515 (Tenn. 1996)*; Gonzalez*, 857 S.W.2d at 44.

6

The nonmovant is entitled to the benefit of any doubt. ***Byrd v. Hall***, 847 S.W.2d 208, 211 (Tenn. 1993).  The trial court must "take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence."  ***Id.*** at 210-11.  All facts supporting the nonmovant's position must be accepted as true.  ***Id.*** at 212.  It is only when the material facts are not in dispute and conclusively show that the movant is entitled to a judgment that a trial court is justified in depriving a claimant of its right to a plenary trial.  In all other instances, a trial on the merits is necessary.  Summary judgment "is clearly not designed to serve as a substitute for the trial of genuine and material factual matters."  ***Id.*** at 210.

III.

"Generally, whether an employee is acting within the scope of his or her employment is a question of fact..." ***Tennessee Farmers Mut. Ins. Co. v. American Mut. Liability Ins. Co.***, 840 S.W.2d 933, 937 (Tenn.App. 1992). The question before us regarding the claim against the City arising out of Rodney Parton's negligent driving is this: Is there a factual dispute in the record as to whether, at the time of the accident, Parton was operating his vehicle "while in the scope of his employment," as that language is used in T.C.A. § 29-20-202? If there is a genuine issue of material fact as to this concept, the City is not entitled to summary judgment. Rule 56.04, Tenn.R.Civ.P. In order to determine this issue, we must first address a specific underlying question: Can a police officer, who is not "on the clock," still act "in the scope of his employment" under T.C.A. § 29-20-202? Or, put another way, must a police officer be on an official duty shift in order to be considered as acting "in the scope of his employment"? ***Id.***

After careful consideration of these questions, we are of the opinion that an officer does not necessarily have to be on an official shift or "on the clock" to act within the scope of his or her employment. *Cf*. ***Hassell v. Metropolitan Government of Nashville and Davidson County***, 1994 WL 374515 (Tenn.App. 1994). According to the noted tort authorities, Prosser and Keeton, the phrase "scope of the employment"

8

> refers to those acts which are so closely
> connected with what the servant is employed
> to do, and so fairly and reasonably
> incidental to it, that they may be regarded
> as methods, even though quite improper ones,
> of carrying out the objectives of the
> employment.... It has been said that in
> general the servant's conduct is within the
> scope of his employment if it is of the kind
> which he is employed to perform, occurs
> substantially within the authorized limits of
> time and space, and is actuated, at least in
> part, by a purpose to serve the master.

W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 70 (5th ed. 1984). Under this definition, we believe that a jury could reasonably conclude that Rodney Parton was acting within the scope of his employment when he pursued the brown vehicle. Typically, the pursuit and detention of a traffic violator by a law enforcement officer -- regardless of whether that officer is on duty -- is an activity that is arguably "closely connected with", or at least "fairly and reasonably incidental to," his or her job duties. *Id.* In this instance, Rodney Parton's actions in pursuing the brown car were arguably taken for the purpose of furthering the objectives of his employment; in addition, the pursuit appears to have been "actuated, at least in part, by a purpose to serve the master." *Id.* This may be the case irrespective of the fact that he was not "on the clock" or driving an official police vehicle.[3] Therefore, under the facts of this case, we find that a material factual issue exists as to whether Rodney Parton was acting within the scope of his

---

[3]T.C.A. § 29-20-202 does not condition waiver of immunity on a finding that the employee was operating the *governmental entity's* motor vehicle; it merely refers to the negligent operation of *a* motor vehicle. *Id.*

9

employment at the time of the accident.  Accordingly, we hold that summary judgment as to this aspect of the plaintiffs' claim was inappropriate.[4]

IV.

We next consider the plaintiffs' claim of negligent conduct by James Carico, the Maryville officer who investigated the accident.  As indicated earlier, the plaintiffs allege that the City is liable for allowing one of its own officers to investigate the accident.  They also contend that the City should be held liable for Carico's negligence in preparing the accident report, and for concealing Rodney Parton's wrongful conduct by failing to correct the errors contained in the report.  According to the plaintiffs, the report resulted in adverse publicity and economic harm to Olympia after it was cited in an article in a local newspaper article.

We agree with the City's assertion that the plaintiffs have failed to establish the existence of any duty owed them by

_____

[4]In so holding, we reject the City's argument that the plaintiffs' complaint did not sufficiently aver that Parton had acted within the scope of his employment.  We believe that, fairly construed, the complaint sufficiently alleges that Rodney Parton was acting within the scope of his employment at the time of the accident.  Likewise, we disagree with the City's contention that the plaintiffs failed to contradict evidence offered by the City showing that Rodney Parton did not act within the scope of his employment.  The record contains sufficient evidence -- for example, in the depositions of Rodney Parton and Tony Parton and the affidavit of Kevin Clenedon, a parent of one of the children in the van -- to raise a question of material fact as to that issue.

10

the City in this regard.  Generally speaking, the existence of a

duty

> is a question of law for the court which
> requires consideration of whether "such a
> relation exists between the parties that the
> community will impose a legal obligation upon
> one for the benefit of others -- or, more
> simply, whether the interest of the plaintiff
> which has suffered invasion was entitled to
> legal protection at the hands of the
> defendant."

*Coln v. City of Savannah*, 966 S.W.2d 34, 39 (Tenn. 1998)(citing

*Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn. 1993)).  In this

instance, the circumstances surrounding the investigation of the

accident do not give rise to any duty which inures to the benefit

of the plaintiffs or which, if breached by the City, would

warrant an award of damages.[5]

In a negligence action where the dispositive issue is a

question of law -- such as the existence or non-existence of a

duty -- an award of summary judgment is proper.  *Marr v.*

*Montgomery Elevator Co.*, 922 S.W.2d 526, 529 (Tenn.App. 1995).

_____

[5]The plaintiffs' reliance on *Ezell v. Cockrell*, 902 S.W.2d 394 (Tenn. 1995), with respect to this issue is misplaced.  *Ezell* involves the public duty doctrine, which "shields a public employee from suits for injuries that are caused by the public employee's breach of a duty owed to the public at large."  *Id.* at 397.  In *Ezell*, the Supreme Court held that a "special duty" exception to the public duty doctrine exists where "1) officials, by their actions, affirmatively undertake to protect the plaintiff, and the plaintiff relies upon the undertaking; 2) a statute specifically provides for a cause of action against an official or municipality for injuries resulting to a particular class of individuals, of which the plaintiff is a member, from failure to enforce certain laws; or 3) the plaintiff alleges a cause of action involving intent, malice, or reckless misconduct."  *Id.* at 402.  The facts of this case do not bring it within the "special duty" exception.

11

Having determined that there is no duty "running" to the plaintiffs, we hold that the trial court correctly granted summary judgment as to this portion of the plaintiffs' cause of action.

V.

As noted above, the trial court also dismissed the individual claims of plaintiffs Dunn and Everhart, who sought damages for their alleged emotional distress, psychological harm, and economic loss.  The Supreme Court has recently held that in order to recover for emotional injuries sustained as a result of injury to a third person, a plaintiff must establish, among other things, that his or her emotional injury was a proximate and foreseeable result of the defendant's negligence.  *Ramsey v. Beavers*, 931 S.W.2d 527, 531 (Tenn. 1996).  The Court further held that, with regard to establishing foreseeability,

> [t]he plaintiff's physical location at the time of the event or accident and awareness of the accident are essential factors. Obviously, it is more foreseeable that one witnessing or having a sensory observation of the event will suffer effects from it.... Thus, [a] plaintiff must establish sufficient proximity to the injury-producing event to allow sensory observation by [the] plaintiff.

*Id.*  (Footnote omitted).  In this case, both Dunn and Everhart testified in their depositions that they had not witnessed or been present during the accident.  Under these circumstances, they cannot "establish sufficient proximity" to the event that allegedly caused their injuries.  *Id.*  Thus, the trial court correctly granted summary judgment as to their claims for emotional and psychological damages arising out of the accident.

13

Dunn and Everhart argue in their brief that in addition to emotional and psychological injuries, they suffered "physical manifestations of stress-related and anxiety-related injuries as a result of the accident, the police report and media coverage and the subsequent actions of the Maryville Police Department." Specifically, Dunn and Everhart attribute the damages allegedly sustained by the corporation to adverse publicity resulting from the publication of a newspaper article based on James Carico's accident report. We find this argument to be without merit. As we have previously explained, the plaintiffs have not established the existence of any duty owed them by Carico. Furthermore, any claims based on alleged economic damage to Olympia arising out of negative publicity are the claims of the corporation, not of shareholders Dunn and Everhart individually.

We therefore find that the trial court correctly granted summary judgment in favor of the City as to the individual claims of Dunn and Everhart.

The trial court also dismissed the claims of plaintiff Murphy, who sought recovery for her physical injuries sustained in the accident, as well as for "emotional and psychological harm." As to these claims, we find that the City was not entitled to summary judgment. Unlike Dunn and Everhart, Murphy -- the driver of the van -- was directly involved in the collision and suffered physical injuries as a result. We have previously found that a genuine issue of material fact exists as

14

to whether Rodney Parton was acting within the scope of his employment at the time of the accident.  Therefore, summary judgment on Murphy's individual claim that the City is liable for Rodney Parton's actions is inappropriate.

VI.

The plaintiffs further allege that the City was negligent in the hiring, training and supervision of Carico and Rodney Parton.  However, the plaintiffs do not support this position with any authority, as required by Rule 27(a), T.R.A.P.  Accordingly, this issue is waived.  *Id.*; *see Rampy v. ICI Acrylics, Inc.*, 898 S.W.2d 196, 210 (Tenn.App. 1994).  Even if we were to consider this argument, we have already found that the plaintiffs failed to establish any duty to the plaintiffs on the part of the City with regard to the actions of Carico; furthermore, with regard to Parton, we are of the opinion that the record does not make out a cause of action for negligent hiring, training or supervision.

VII.

Finally, the plaintiffs assert that the City violated their due process rights under the Tennessee Constitution by denying their "right of access to the court system."  In this context, they contend that the City "either recklessly or deliberately concealed information regarding their own employee,

15

Rod Parton, and also concealed the identity of the driver of the pursued car." Specifically, the plaintiffs argue that Maryville Chief of Police Terry Nichols failed to disclose the identity of the driver of the brown car, and that the City improperly erased certain videotapes made during the investigation of the accident.

As noted earlier, the plaintiffs dismissed their federal civil rights claims when this matter was pending in federal court. The agreed order dismissing this case in that venue contains the following statement:

> The parties agree that any federal claims
> have been dismissed by Amending the Complaint
> in this action.

The federal court remanded this action back to state court based upon its determination that the plaintiffs had abandoned their federal claims. We find and hold that the plaintiffs gave up these federal claims, with prejudice, in order to avoid litigating these matters in federal court. Pursuit of those claims now in this state court action is totally at variance with the action taken by them in federal court. Those claims are no longer viable.

The plaintiffs argue that they subsequently amended their complaint to assert a separate cause of action under the Tennessee Constitution. However, a review of the record reveals that neither the motion to amend nor the amended complaint are in

16

the record certified to this court.[6] By the same token, the record does not contain an order allowing an amendment to assert a claim under the Tennessee Constitution. The record simply does not substantiate the plaintiffs' claim that an alleged violation of the Tennessee Constitution was ever a part of this lawsuit. Accordingly, we find no basis for holding that such a claim survives the City's motion for summary judgment. The City cannot be faulted for not negating what was not there to be negated. A claim under the Tennessee Constitution was not before the trial court and is not now before us.

## VIII.

It results that the trial court's grant of summary judgment as to Olympia's and Murphy's claims that the City is liable for Rodney Parton's actions is vacated. The trial court's grant of summary judgment in favor of the City as to all remaining claims of the plaintiffs is affirmed. Costs on appeal are taxed to the appellee. This case is remanded to the trial court for such further proceedings as are necessary, consistent with this opinion.

_____
Charles D. Susano, Jr., J.

---

[6]The plaintiffs' brief states that a copy of the motion to amend is attached as an exhibit. However, the actual document attached to the brief is the plaintiffs' Response to Petition for Removal. Although reference to the motion to amend is made in this pleading, it does not contain a copy of the motion to amend, nor can it be found elsewhere in the record.

CONCUR:


_____
Herschel P. Franks, J.


_____
Don T. McMurray, J.